```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

KATHLEENA ANN WHITMORE and    :
CHARON J. MAITLAND,           :
         Plaintiffs,          :
                              :
v.                            :         3:00CV1232(WWE)
                              :
RENITA O. THOMPKINS,          :
         Defendant.           :
```

**RULING ON DEFENDANT'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW**

Plaintiffs Kathleena Ann Whitmore and Charon J. Maitland brought an action in diversity alleging both state statutory and common law violations.  A trial was held and a jury verdict for the plaintiffs was returned.  Pending before the court is defendant Renita O. Thompkins's renewed motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b), to set aside the verdict.  For the reasons set forth below, defendant's motion [doc. # 54] will be granted.

BACKGROUND

Kathleena Ann Whitmore and Charon J. Maitland's uncle, Benjamin J. Whitmore, died intestate in December 1996 as a resident of North Carolina.  Whitmore and Maitland were designated as death beneficiaries on various U.S. Savings Bonds owned by the decedent.

Renita Thompkins, who was appointed administratrix of Benjamin Whitmore's estate by the General Court of Justice in North Carolina, came across the plaintiffs' savings bonds while

performing a final accounting of the estate. However, because the bonds only referred to plaintiffs as "Cathy Whitmore" and "Jean Whitmore" (the names the decedent used when referring to Whitmore and Maitland, respectively), Thompkins did not realize that they belonged to the plaintiffs.

Thompkins attempted to locate "Cathy" and "Jean" by asking Ruth Green, who was the decedent's sister as well as the plaintiffs' aunt. Green stated that she did not know either person. Thompkins then sent letters to each heir of the decedent's estate, many of whom were plaintiffs' relatives. Each heir returned an affidavit denying any knowledge of a "Cathy" or "Jean." Incredibly, one such affiant was plaintiffs' brother, James Whitmore, Jr., who lived at the same address as the plaintiffs.

Unable to ascertain either a "Cathy" or "Jean," Thompkins redeemed the bonds and added the cash proceeds to the corpus of the decedent's estate. The proceeds were then distributed with other estate assets to each heir.

Later realizing that their bonds had been redeemed and added to their late uncle's estate, Whitmore and Maitland sought reimbursement from the Bureau of Public Debt at the U.S. Treasury Department. Plaintiffs eventually received the value of their bonds plus interest.

In June 2000, plaintiffs commenced an action in this court,

seeking damages for emotional distress and for attorney fees they incurred as a result of seeking reimbursement.  A two day trial was held in May 2003.  At the close of all evidence, Thompkins's attorney moved for judgment as a matter of law.  The court denied the motion and submitted the action to the jury.  The jury returned with a verdict, finding Thompkins liable for a breach of fiduciary duty, under N.C. Gen. Stat. § 28A-13-10(b) & (c), and for negligent infliction of emotional distress.  Plaintiffs were awarded a total of $3,500 on the distress claim, and $27,500 as damages for the attorney fees.

## DISCUSSION

A.  Rule 50(b)

Rule 50(b) allows a party to renew a previous motion for judgment as a matter of law ("JMOL") after an action has been submitted to a jury and a verdict has been rendered.  See Fed. R. Civ. P. 50(b); Samuels v. Air Transport Local, 504, 992 F.2d 12, 14 (2d Cir. 1993).  Under the rule, a court may remove a verdict from a prevailing party where either (1) the evidence, when viewed in the light most favorable to that party, but without considering credibility or weight, reasonably permits only an adverse conclusion, or (2) the verdict is impermissible on legal grounds.  See Samuels, 992 F.2d at 14 & 16 (setting forth the standard for a Rule 50(a) motion and imputing the same standard to a post-verdict motion under Rule 50(b)).

In this case, defendant contends that there was such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer conjecture, and that the jury's verdict contradicts applicable substantive law. The court considers the propriety of the jury's verdict in light of the evidence presented at trial and the underlying state law.

B.  Damages for Breach of Fiduciary Duty

The jury found that plaintiffs, as death beneficiaries of the savings bonds, were "interested persons" and that Thompkins was liable to them for commingling the bond proceeds, i.e., "property not part of the estate," with assets of the estate. See N.C. Gen. Stat. § 28A-13-10(b) & (c). At the time of trial, however, plaintiffs had already recovered the full value of their bonds. Thus, the only damages for the jury to consider were the attorney fees that plaintiffs incurred as a result of seeking reimbursement. Plaintiffs were awarded a total of $27,500 as damages for the attorney fees, with $18,500 to Whitmore and $8,950 to Maitland.

The threshold question is whether attorney fees may ever be awarded as a component of damages. Whitmore and Maitland contend that attorney fees may be awarded as damages here because the fees were incurred in "independent, non-court, efforts [to recover the value of their bonds] from the Bureau of Public

Debt," as a result of Thompkins's breach.  Def. Opp. at 10. Thompkins, however, contends that applicable case law precludes such an award.  The court agrees.

Under the so-called "American Rule," reiterated by the U.S. Supreme Court in Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 & 247 (1975), a prevailing party in a federal litigation cannot recover attorney fees as costs *or otherwise*, absent statutory authorization.  North Carolina state courts have similarly held that "in the absence of . . . statutory authority, attorney fees may not be recovered by the successful litigant *as damages* or as a part of the court costs."  (emphasis added). Washington v. Horton, 513 S.E.2d 331, 349 (N.C. Ct. App. 1999) (citing Hicks v. Albertson, 284 N.C. 236, 238 (1973); see also Stillwell Enter., Inc. v. Interstate Equip. Co., 300 N.C. 286, 289 (1980) (stating that "it is well established that the non-allowance of counsel fees has prevailed as the policy of [North Carolina] at least since 1879").

In this case, plaintiffs fail to cite any statute that would provide an exception to this rule.  Section 28A-13-10(c) imposes liability on defendant for "resulting damage or loss to the same extent as a trustee of an express trust."  Plaintiffs, however, do not cite an authorizing statute or any principle of North Carolina trusts and estate law that would support an award of attorney fees as a component of the "damages" authorized under

5

subsection (c). Furthermore, adopting the plaintiffs' argument would remove any disincentive from needlessly incurring attorney fees because a party could proceed with legal action, even if otherwise not warranted, with the assurance of being able to recover its costs for legal counsel in a secondary suit, as plaintiffs do here, even absent an authorizing statute. Clearly, that kind of practice would obliterate the "American rule" against awarding attorney fees in general, as discussed *supra*. While the rule is not without its defects, plaintiffs have not demonstrated that deviation is justified in this case. Therefore, defendant's motion to vacate the damages award for attorney fees is granted.

B.   Damages for Negligent Infliction of Emotional Distress

At trial, the jury also awarded each plaintiff $1,750 for emotional distress suffered as a result of Thompkins's negligent commingling of the bond proceeds with their uncle's estate. Thompkins argues that the award cannot stand because there was insufficient evidence at trial upon which the jury could have based its finding of emotional distress, and therefore the verdict must have been based on the jury's mere conjecture.[1]  The court agrees.

---

[1] The court notes that plaintiffs' reply brief does not specifically address this issue. Nonetheless, the court refers to their argument on this issue that is contained in prior submissions and the trial testimony.

To state a claim for negligent infliction of emotional distress ("NIED"), North Carolina courts require that the plaintiff show (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress. Pacheco v. Rogers and Breece, Inc., 579 S.E.2d 505, 507-08 (N.C. App. 2003) (quoting Johnson v. Ruark Obstetrics, 327 N.C. 283 (1990)). The North Carolina Supreme Court has defined "severe emotional distress" as a condition that is "so severe that no reasonable [person] could be expected to endure it," such as "neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Id. at 508. Thus, garden variety anxiety or concern is not actionable. See id. While proof of "severe emotional distress" does not necessarily require medical evidence or testimony, North Carolina courts have consistently dismissed NIED and similar claims where a plaintiff fails to produce any real evidence of such distress. See id.

In this case, plaintiffs did not present any real evidence that they suffered "severe emotional distress" as a result of Thompkins's negligent redemption of their bonds. At trial, plaintiffs stated that they became "withdrawn" and did not sleep,

7

that this case became their lives, and that they lost time from work. As defendant points out, North Carolina state courts have denied NIED claims where the symptoms alleged were of the same or greater degree than that of plaintiffs. Notably, in <u>Johnson v. Scott</u>, 528 S.E.2d 402 (N.C. App. 2000), the appellate court upheld the granting of summary judgment on plaintiffs' NIED claim where the plaintiffs' stepmother had shot and killed their father. In that case, plaintiffs alleged loss of appetite, nightmares, and fearfulness of the dark. <u>See</u> <u>id.</u> at 405. The court found that such symptoms did not constitute "severe and emotional" distress because there was no evidence that they were "severe and disabling." <u>See</u> <u>id.</u> Similarly, in this case, plaintiffs failed to demonstrate at trial that they suffered from anything that went beyond general frustration and anxiety. The law, as a general matter, and as it is in North Carolina, does not intervene to remedy such everyday hardship. Accordingly, the plaintiffs' award for severe emotional distress must also be set aside as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant's renewed motion for judgment as a matter of law [doc. # 54.] is GRANTED.  The Clerk is directed to enter judgment for the defendant and to close the case.

So ordered this 5th day of April, 2004, at Bridgeport, Connecticut.

                                            /s/
                                Warren W. Eginton
                                Senior United States District Judge